JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas Buzzard
Leah Seliger
Michael DiGiulio

32 Broadway, Suite 601
New York, NY 10004
Tel: 212-688-5640
Fax: 212-688-2548
www.jk-llp.com

October 15, 2024

**VIA ECF**

Hon. Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    Morais v. DRG Hospitality Group, Inc.
              No. 24 CV 4379

Dear Judge Lehrburger:

      We represent the Plaintiff in the above-referenced Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. The parties have reached a settlement, and their executed settlement agreement is annexed hereto as Exhibit 1. We submit this letter to respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so-order the parties' stipulation of dismissal of this action.

      Plaintiff worked for Defendants as a server at Delmonico's restaurant from roughly October 2023 to June 2024. Plaintiff alleged that Defendants violated the FLSA and/or New York law by (1) paying him pursuant to a tip credit while failing to provide him with the required notice and/or requiring him to spend more than 20% of his shifts performing non-tipped work; (2) failing to pay him spread of hours compensation; (3) including managerial employees in the tip pool; (4) distributing Plaintiff's cash tips more than 7 days after the week in which they were earned; and (5) failing to provide Plaintiff with the wage notices and wage statements required under N.Y. Lab. L. § 195. Plaintiff commenced this action on June 7, 2024, and the parties reached a settlement before Defendants answered.

      Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing

1

their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). In light of the purpose of the FLSA, a court may also consider

(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. at 336 (internal quotation marks omitted). Under the *Wolinsky* factors, the parties' settlement is fair and reasonable and should be approved.

As set forth in the settlement agreement, the parties have agreed to settle the claims in this action for $10,000. This is an excellent settlement in light of Plaintiff's maximum possible recovery. Based on the wages reflected in Plaintiff's W-2 and final paycheck, Plaintiff's maximum unpaid tip credit compensatory damages are $2,413.48. Plaintiff estimates that his maximum unpaid spread of hours damages are $300 (two spread of hours shifts per week for 10 weeks in 2023 with a spread of hours rate of $15[1]), and his share of the tips paid to alleged managers is $1,992.78.[2] Thus, Plaintiff's maximum compensatory damages are $4,406.26. Plaintiff could also recover an equal amount as liquidated damages, as well as liquidated damages for late paid cash tips, which Plaintiff estimates total $2,836.45[3], and up to $10,000 for violations of NYLL § 195(1), (3). The settlement, which is more than double Plaintiff's maximum out of pocket loss and a sufficient percentage of recovery under *Cheeks* and its progeny based on Plaintiff's best case scenario damages, is clearly reasonable.

Moreover, Plaintiff faced substantial risks in actually obtaining his maximum possible recovery. Defendants maintain that they provided Plaintiff with notice of the tip credit and in fact produced a tip credit notice from 2023. If that notice were found to satisfy the requirements of New York law, Plaintiff would lose most or all of his tip credit claim for 2023. In addition, Defendants contend that there were no tip-ineligible people in the restaurant's tip pool and that

---

[1] Plaintiff's final paystub from 2024 shows that Defendants paid spread of hours compensation in 2024.

[2] This is calculated based on the assumption that Plaintiff's share of the alleged managers' tips is equal to 10.7% of the credit card tips he actually received. This percentage is derived from the damage calculation prepared in support of an application for a default judgment in *Alexander v. DRG Hospitality Group, Inc.*, Case No. 23 CV 11101 (S.D.N.Y.), which is a case brought by a Delmonico's server and captain that asserted similar claims as the instant action. Based on the restaurant's tip sheets, the *Alexander* plaintiffs calculated that their share of the alleged managers' tips were, on average, roughly 10.7% of the credit card tips they received. As the Plaintiff in this action does not have any tip sheets or other tip documents, the *Alexander* calculations are a reasonable basis for estimating Plaintiff's tip damages here.

[3] Plaintiff estimates, based on the default damage calculation in *Alexander*, that his cash tips were 15.23% of the credit card tips he received.

2

Plaintiff received his cash tips on time.  Defendants would likely also challenge Plaintiff's Article III standing on the N.Y. Lab. L. § 195(1), (3) claims.  *See Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024) (adopting this Court's recommendation to dismiss certain N.Y. Lab. L. § 195 claims for lack of standing).  These risks weigh strongly in favor of approving the settlement

The settlement was the result of arm's length negotiations between experienced counsel.  Accordingly, the settlement is not the result of fraud or collusion.

The settlement is also fair and reasonable in light of the purposes of the FLSA.  While there may be other employees situated similarly to Plaintiff, the settlement does not affect their rights in any way; they are free to bring their own claims against Defendants.  Moreover, the settlement is not confidential, and its non-disparagement clause is both mutual and contains a carve-out for truthful statements about this litigation.  Thus, Plaintiff may, if he wishes, discuss his FLSA claims with similarly situated employees.  *Espinal v. Orchard Taylor Serv. Corp.*, No. 24 CV 2832, 2024 U.S. Dist. LEXIS 143003, at *2 (S.D.N.Y. Aug. 8, 2024) (Lehrburger, J.).  The Settlement Agreement also includes mutual releases arising out of or relating to Plaintiff's employment with Defendant DRG Hospitality, which this Court has found to be permissible in FLSA settlements.  *Lijun Geng v. Shu Han JU Rest. II Corp.*, No. 18 CV 12220, 2022 U.S. Dist. LEXIS 175330, at *3 (S.D.N.Y. Sept. 27, 2022) (Lehrburger, J.).  In light of the excellent recovery that this settlement provides Plaintiff, there are no policy reasons that warrant rejecting the settlement, and the settlement should be approved as fair and reasonable.

The settlement also provides for reasonable attorneys' fees and costs to Plaintiff's counsel.  Under the settlement agreement, Plaintiff's counsel will receive a total of $3,666.67 for attorneys' fees and costs.[4]  In determining whether a fee is reasonable, a court considers "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

Plaintiff's counsel's time and labor warrant the requested fee.  Plaintiff's counsel (1) met with Plaintiffs to learn relevant facts; (2) drafted the complaint; (3) negotiated a settlement; and (4) drafted settlement papers.  In total, Plaintiff's counsel spent 12.1 hours on this action, as set forth in the contemporaneous time records attached hereto as Exhibit 2, resulting in a lodestar of $5,150, which is more than the requested fee and costs.  Thus, the requested fee is objectively reasonable.[5]

As set forth *supra*, Plaintiff faced risks in this case based on disputed issues and collections challenges.  Plaintiff's counsel took this case pursuant to a retainer agreement that stated that counsel would receive a percentage of the recovery only if Plaintiff obtained a recovery.  Accordingly, Plaintiff's counsel faced a risk of receiving little or no payment for their work

---

[4] Plaintiff's counsel paid $919 in costs, which consisted of the following: $405 filing fee and $514 for service of process.
[5] The billing attorneys in this case are the undersigned and D. Maimon Kirschenbaum.  JK's paralegal Mariela Lini also performed work on this case.

depending on the outcome of the underlying claims. Thus, the magnitude, complexities, and risks of the litigation weigh in favor of approving the requested fee.

I received my J.D. from NYU School of Law, *cum laude*, in 2008 and joined JK in January 2009. I was an associate at JK until February 2017, when I became a partner. At JK, my practice has consisted almost entirely of representing employees in their claims against employers. Mr. Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters. Thus, for Mr. Kirschenbaum's entire legal career, the overwhelming majority of his practice has been representing employees with employment-related claims. As a result of his accomplishments, he became a member/partner of the firm in May 2007, and he currently manages the firm. Courts have repeatedly recognized Mr. Kirschenbaum's and my skill and expertise in wage and hour litigation. *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (attached as Exhibit 3). Thus, the quality of representation weighs in favor of approving the requested fee. Moreover, Mr. Kirschenbaum and I have been approved at a rate of $500 per hour. *See Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518 (S.D.N.Y. Feb. 12, 2023) (Lehrburger, J.) (attached as Ex. 4). Plaintiff's counsel used their experience to obtain an excellent result for Plaintiff.

The requested fee is reasonable in relation to the settlement. The settlement agreement provides for total fees and costs of $3,666.67, or 36.67% of the total settlement amount. This is less than the amount authorized in Plaintiffs' retainer agreement, which permitted JK to recover all costs and one-third of the after-costs recovery, or $3,946 ($919 in costs plus one-third of $9,081, or $3,027). The proposed fee was consensual and agreed to by Plaintiff, both in Plaintiff's retainer agreement and the settlement agreement itself. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). Moreover, "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016); *see also*, *e.g.*, *Geskina v. Admore Air Conditioning Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *8-9 (S.D.N.Y. May 3, 2017); *Ramirez v. Greenside Corp.*, No. 16 CV 726, 2017 U.S. Dist. LEXIS 30527, at *9-10 (S.D.N.Y. Mar. 3, 2017); *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016).

Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a). A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth about, we respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

      For the foregoing reasons, we respectfully request that the Court approve the parties' FLSA and NYLL settlement and so order the stipulation of dismissal. We thank the Court for its attention to this matter.

                                                        Respectfully submitted,

                                                        <u>/s/ Denise A. Schulman</u>
                                                        Denise A. Schulman

cc: All Counsel (via ECF)